UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Henry John Tisor,

Plaintiff,

vs. REPORT AND RECOMMENDATION

T.C. Peterson, B. Fornengo,
C.L. Wolfe, G.L. Hershenberger,
Harrell Watts,

Defendants. Civ. No. 00-1950 (MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 2nd day of July, 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Dismiss the Plaintiff's Complaint or, alternatively, to grant them Summary Judgment, and upon the Plaintiff's Motion for Summary Judgment. The Plaintiff's Complaint is predicated upon Title 42 U.S.C. §1983,[1] and alleges that the Defendants

[1]The Plaintiff has also filed a Motion for a Temporary Order of Restraint, which requests that we prohibit his transfer, to another penal institution, pending the disposition of this action. Since we recommend that the Plaintiff's Complaint be dismissed, we (continued...)

FILED JUL 02 2001
RICHARD D. SLETTEN, CLERK
JUDGEMENT ENTERED
DEPUTY CLERK'S INITIALS

have violated his rights, under the First, Fifth, and Fourteenth Amendments to the United States Constitution, by confiscating a publication, which is entitled Might is Right, because of its racist content. The Plaintiff has appeared pro se, and the Defendants have appeared by Patricia R. Cangemi, Assistant United States Attorney.

For reasons which follow, we recommend that the Plaintiff's Motion for Summary Judgment be denied, and that the Defendants' Motion for Summary Judgment be granted.

## II. Factual and Procedural History

The Plaintiff identifies himself as an inmate at the Federal Correctional Institution, in Sandstone, Minnesota ("FCI-Sandstone"). According to his Complaint, the Plaintiff's constitutional rights were violated, when he was an inmate, at PCF-Appleton, because the staff, of that institution, traversed the Plaintiff's right to free speech, and to the equal protection of the laws, when the staff confiscated a book that was in his possession, upon his transfer from the Federal Correctional Institution in Florence, Colorado ("FCI-Florence"). The Plaintiff seeks injunctive relief, which would require the Defendants to return his book and, in the

---

[1](...continued)
deny the Plaintiff's Motion for a Temporary Order of Restraint as moot.

event that the book has been destroyed, the Plaintiff seeks an award of $15.00, in order to replace the book.

On October 15, 1999, while processing the Plaintiff's property, upon his transfer from FCI-Florence to FCI-Standstone, Inmate Systems Officer Craig Wolfe found a book entitled Might is Right. See, Declaration of Craig Wolfe. According to Wolfe, he was aware that this book had been rejected by the Warden, prior to the Plaintiff's arrival at FCI-Sandstone, and therefore, he removed it from the Plaintiff's property. Id. Subsequently, a letter was given to the Plaintiff, advising him that the book had previously been rejected by the Warden of FCI-Sandstone -- the Defendant T.C. Peterson ("Peterson") -- because the book contained derogatory statements against various races, and was considered to be detrimental to the security of the institution. Id.

On October 27, 1999, the Plaintiff's Correctional Counselor, Defendant Brenda Fornengo ("Fornengo"), provided the Plaintiff with an Informal Resolution Form in order to appeal the rejection of the book. See, Declaration of Brenda Fornengo. After the form was returned, Fornengo informed the Plaintiff that the Warden could reject a publication if it was determined to be detrimental to the security, good order, or discipline of the institution, and that his book had been rejected on that basis. Id. The Plaintiff ap-

pealed that decision at both the administrative, and institutional levels. Id.

According to Peterson, he reviewed Might is Right, and rejected the publication, because he felt that the material would have a negative impact on the orderly running of FCI-Sandstone, since the publication was detrimental to institutional security. See, Declaration of T.C. Peterson. Specifically, Peterson avers that, upon his review of the publication, he found it to contain derogatory statements against ethnic minorities. Id. For example, within the book, African-Americans were referred to as "hulking, thick skulled Negro[es]", and as "an inferior breed." Id. In addition, practitioners of Judaism were referred to as, among other things, "locusts and caterpillars." Id. According to Peterson, Title 28 C.F.R. §540.71 allows the Warden of a Federal Penal Institution to reject a publication if it is determined to be detrimental to the good order, and the security of the facility, or if it might facilitate criminal activity. Id. Since he believed that the derogatory statements, which were contained in Might is Right, presented a security concern, he concluded that the book would not be allowed within the institution, so that order could be maintained. Id.

The Plaintiff premises his Section 1983 claim on the assertedly unlawful confiscation of his book. According to the Plaintiff,

by seizing Might Is Right, the Defendants violated his right to free speech, as protected by the First Amendment of the United States Constitution. In addition, the Plaintiff alleges that the Defendants have failed to demonstrate that his possession of Might Is Right was detrimental to the security, or the orderly administration of FCI-Sandstone. Lastly, the Plaintiff contends that, by confiscating his book, the Defendants violated his right to the equal protection of the laws.

We disagree with the Plaintiff's arguments and, finding that the Defendants are entitled to Judgment as a matter of law, we recommend that Summary Judgment be granted in their favor.

## III. Discussion

A. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. Krentz v. Robertson, 228 F.3d 897, 901 (8th Cir. 2000); Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000); Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999). For these pur-

poses, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Dodd v. Runyon, 114 F.3d 726, 729 (8th Cir. 1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also,

Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

Applying these standards, we turn to an analysis of whether the Plaintiff has established a claim that provides any triable issues.

B. Legal Analysis.

1. The Petitioner's First Amendment Claims.

According to the Plaintiff, by confiscating his book, the Defendants violated his First Amendment right to free speech.

a. Standard of Review. It is well-established that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." Thornburgh v. Abbott, 490 U.S. 401, 407 (1988), quoting Turner v. Safley, 482 U.S. 78, 84 (1987); see also, Procunier v. Martincz, 416 U.S. 396,

422 (1974) (Marshall, J., concurring). Nevertheless, the constitutional rights of prisoners and others "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." Thornburgh v. Abbott, supra at 407. Thus, to the extent that prisoners have First Amendment rights, "they have only those rights that are consistent with prison discipline." Ustrak v. Fairman, 781 F.2d 573, 580 (7th Cir. 1986); see also, Bell v. Wolfish, 441 U.S. 520, 544 (1979); Jones v. North Carolina Prisoners' Labor Union Inc., 433 U.S. 119, 129 (1977); Pell v. Procunier, 417 U.S. 817, 822 (1974); Goff v. Dailey, 991 F.2d 1437, 1439 (8th Cir. 1993).

In Turner v. Safely, supra, the United States Supreme Court established the following standard of review for prisoners' constitutional claims:

> When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.

Turner v. Safely, supra at 89.

As Turner instructs, the reasonableness of a Regulation is dependent upon the following four factors:

> 1. Whether a "valid, rational connection" extends between the prison regulation and the legitimate governmental interest put forward to justify it;

> 2. Whether there are alternative means of exercising the right that remain open to prison inmates;
>
> 3. The impact an accommodation of the asserted constitutional right will have on guards and other inmates, and upon the allocation of prison resources generally; and
>
> 4. The fact that the absence of ready alternatives will evidence the reasonableness of a prison regulation.

Id. at 89-90.

Necessarily, the standard of scrutiny is "relaxed" in order to permit "prison administrators * * * and not the Courts, to make the difficult judgments concerning institutional operations." Id. at 89, quoting Jones v. North Carolina Prisoners' Union, supra at 128.

b. Legal Analysis. Our analysis of this issue is controlled by the Supreme Court's holding, in Thornburgh v. Abbott, supra, where the Court considered the validity of Title 28 C.F.R. §540.71, which allows a prison warden to reject a publication if he determines it to be "detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." Thornburgh v. Abbott, supra at 404, quoting Title 28 C.F.R. §540.71. Initially, in Thornburgh, the Court noted that the type of censorship allowed, under Section 540.71, would give rise to grave First Amendment concerns outside of the prison context. See, Thornburgh v. Abbott, supra at 407. However, the Court went on to analyze Section 540.71 under the standards enunciated in

Turner, and concluded that the statute was facially valid under that standard. Id. at 419.

As stated by the Court:

> We deal here with incoming publications * * *. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs * * * from that material, and cause disorder by acting accordingly.

Id. at 412.

It is precisely these particularized concerns that led Peterson to conclude that Might is Right, a facially racist publication, would be detrimental to the orderly operation of FCI-Sandstone, if left in the possession of the Plaintiff. By removing this publication from the Plaintiff's possession, the prison officials reduced the risk of inmate unrest, such as that associated with inmates who are offended by written materials that are owned by fellow inmates. We defer to the understandable, and legitimate, concern of prison officials, to control the excesses of contentious literature, in the possession of prison inmates, before dissension turns to riot. Further, the Supreme Court made clear, in Thornburgh, that the enforcement, by prison officials, of the restrictions contained in Section 540.71, is not unreasonable. Accordingly, we conclude that

the Plaintiff's First Amendment rights were not violated when Might Is Right was removed from his possessions.

Furthermore, we would generally note that the result, which we here recommend, is consistent with the long-established practice of the Courts to entrust the administration of correctional facilities to prison officials. See, e.g., Thornburgh v. Abbott, supra; Cody v. Hilliard, 830 F.2d 912, 913 (8th Cir. 1987), cert. denied, 485 U.S. 906 (1988). More particularly, "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." Rhodes v. Chapman, 452 U.S. 337, 348-49 (1981). As a consequence, we are reluctant to impose constraints upon prison administrators that may countermand Congress' intent to delegate matters of internal prison security to the responsible prison officials. As our Court of Appeals has observed, prison officials "should be afforded 'a great deal of discretion in running their institutions,'" Sanders v. St. Louis County, 724 F.2d 665, 668 (8th Cir. 1983), and we are presented with no evidentiary basis to believe that the actions of the Defendants were inappropriate, much less constitutionally violative.[2]

---

[2]The Defendants also argue that, to the extent that the Plaintiff may have stated a viable claim for the deprivation of a constitutional right, they are entitled to a qualified immunity. In view of our recommendation, that the Plaintiff has failed to raise a legally meritorious claim, we need not address the Defendants'
(continued...)

2. The Petitioner's Equal Protection Claim. According to the Plaintiff, by confiscating his book, the Defendants violated his right to equal protection under the laws. Simply put, the Equal Protection Clause mandates that all persons, who are similarly situated, should be treated alike. See, City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); More v. Farrier, 984 F.2d 269 (8th Cir. 1993). The guarantee of equal protection is not a source of substantive rights or liberties but, rather, is a right to be free from invidious discrimination in statutory classifications and other Government entitlements. Harris v. McRae, 448 U.S. 297, 322 (1980), reh'g denied, 448 U.S. 917 (1980). An action claiming a violation of this right must show, on its face, that some element of intentional or purposeful discrimination accompanied the unequal treatment. See, Snowden v. Hughes, 321 U.S. 1, 8 (1944). The discriminatory purpose, which is essential to an equal protection claim, implies more than intent or volition; rather, it implies that the violator selected or reaffirmed a particular course of action, at least, in part, because

---

[2](...continued) immunity arguments. See, Siegert v. Gilley, 500 U.S. 226, 233 (1991)(where the Plaintiff fails to allege a constitutional violation, the Court need not consider the Defendants' immunity arguments).

of -- not merely in spite of -- its adverse effects upon an identifiable group. McCleskey v. Kemp, 481 U.S. 279, 298 (1987).

In Divers v. Department of Corrections, 921 F.2d 191 (8th Cir. 1990), our Court of Appeals held, that principles of equal protection might be violated, if a prisoner received treatment that was "invidiously dissimilar" to that received by other, similarly situated inmates. Id. at 193; see also, Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992); Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987). However, any apparent infringement of the Plaintiff's equal protection rights, which is brought about by means of prison regulations or policies, must be adjudged by a deferential standard, i.e., whether the policies are reasonably related to legitimate penological interests. Turner v. Safely, supra. The Supreme Court has already expressly concluded, that Section 540.71 is reasonably related to a prison's interest in maintaining safety and security within the facility. See, Thornburgh v. Abbott, supra. As such, the application of this Regulation cannot provide the basis for the Plaintiff's Equal Protection claim.[3]

[3]In addition, a review of the Plaintiff's Complaint reveals that he has proffered no evidence, whatsoever, to support his assertion that he was treated differently from other inmates who possessed racially offensive written materials.

Accordingly, in the absence of a meritorious claim or, at a minimum, a genuine issue of material fact, Summary Judgment should be granted to the Defendants.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Plaintiff's Motion for Summary Judgment [Docket No. 11] be DENIED.

2. That the Plaintiff's Motion for a Temporary Restraining Order [Docket No. 13] be DENIED.

3. That the Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment [Docket No. 35], be GRANTED.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 21, 2001**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture

of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 21, 2001,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.